IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHAWN BRADEN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 3:19-cv-02976-K (BT) |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Shawn Braden, a Texas prisoner, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The District Court referred the petition to the United States magistrate judge for findings and a recommendation, pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the following reasons, the District Court should DENY Braden's petition.

**Background**

Braden was originally charged by indictment with aggravated sexual assault of a child under six, by causing the penetration of the child's mouth with his sexual organ. *See State v. Braden*, Case Number 15-30110-86-F. The indictment was later amended to allege that he caused the penetration of the child's mouth with his sexual organ and/or that he caused the child's mouth to contact his sexual organ. Braden pleaded not guilty. Later, he was convicted at a jury trial and sentenced to twenty-five years' imprisonment.

Braden appealed, and on direct appeal, he raised an issue similar to the one he now raises in his federal petition: The trial court committed reversible error by allowing Tracy Ramirez, forensic interviewer, to testify as a second outcry witness.[1] *See* Appellant's Br. ([ECF No. 10-7](#)). In its decision, the Fifth Court of Appeals of Texas summarized the issue as follows:

> Two outcry witnesses testified—[Kristi] Hoggatt and Ramirez. Appellant filed a pretrial motion based on article 38.072 to determine the admissibility of the outcry statements. Prior to the first trial of this case, which took place in October of 2016, the trial court held article 38.072 hearings for each outcry witness to determine the reliability of the outcry statements. Appellant's argument against the admissibility of the child's outcry to Ramirez was that it was not reliable. The court ruled that the child's outcry to Ramirez was reliable based on the time, content, and circumstances of the statement. The trial court also ruled, however, that it would limit Ramirez's testimony to the element of penetration because the child's outcry to Hoggatt did not include that element. Appellant did not ask for a running objection.
>
> At the April 2017 retrial of this case, Hoggatt testified before the jury that on the morning of February 2, 2015, the child told her that appellant "shook his weenie." The child also made accompanying hand gestures. The child said appellant "kept trying to put [his penis] her mouth." The child added that this did not hurt her, her mother was not at home at the time, and that when appellant did this she "ran and got under the covers."
>
> Ramirez testified, in part, that the child told her appellant "had put his pee pee thing in her mouth," and the child identified the "pee thing" as appellant's penis. The child told Ramirez that

---

[1] [A]n outcry witness is the first person who can relate and remember at trial the child's statement that in some discernible manner describes the alleged offense." *Dority v. State,* 631 S.W.3d 779, 792 (Tex. App. 2021) (citing *Foreman v. State,* 995 S.W.2d 854, 859 (Tex. App.—Austin 1999, pet. ref'd)); *see also Molina v. State,* 971 S.W.2d 676, 683 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd)).

appellant "was doing stuff like getting naked and taking a shower and he let me in the room and he pulled the curtain. He put it in my mouth in the shower and that's how I got sick." In addition, the child told Ramirez that appellant's penis hurt her teeth, and the child demonstrated this by putting her finger in her mouth and "kind of" moving her finger from side to side. The child also provided sensory details regarding how appellant's penis looked and smelled. Appellant did not object to this testimony.

On cross-examination, Ramirez testified that the child said appellant showed her his penis and tried to put it in her mouth, but the child ran away. Ramirez also testified on cross-examination that she asked the child whether appellant put his penis in her mouth, and she shook her head and said, "No, he says he was but he didn't." Ramirez further testified that she did not view those statements as conflicting with the child's other statements about penetration because the child told her the sexual encounters happened multiple times and the child may have been talking about different occasions when appellant did or did not put his penis in her mouth.

*Braden v. State*, 2018 WL 3725266, at *1-2 (Tex. Crim. App. Aug. 6, 2018). The Fifth Court of Appeals affirmed the trial court's judgment. *See Braden v. State*, No. 05-17-00499-CR, 2018 WL 3725266 (Tex. App. – Dallas, Aug. 6, 2018.) Braden did not file a petition for discretionary review with the Texas Court of Criminal Appeals (CCA).

Then, Braden, through his attorney, challenged his conviction in an application for a state writ of habeas corpus. The sole issue Braden raised is the same issue he now raises in his federal petition. State Habeas Ct. R.-04 173 (ECF No. 10-29). The CCA denied Braden's application for a state writ of habeas corpus without a written order. *See* State Habeas Ct. R.-01 1 (ECF No. 10-26).

3

On December 17, 2019, Braden, through his retained attorney, filed his § 2254 petition and memorandum in support. Pet. (ECF No. 1); Mem. (ECF No. 1-1). In his sole claim, Braden argues that his trial attorney, Michael J. Todd, provided ineffective assistance of counsel when he failed to object to Ramirez testifying at trial as a second outcry witness. Braden's claims are fully-briefed and ripe for determination.

## Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, provides:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

28 U. S. C. § 2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v.*

4

*Taylor*, 529 U.S. 362, 380-84 (2000). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.*

## Analysis

In his sole claim, Braden argues that his trial attorney provided ineffective assistance of counsel when he failed to object to Ramirez, a forensic interviewer, testifying as a second outcry witness, as she was arguably the only witness who established the element of penetration. Mot. 6 (ECF No. 1); Mem. 5-9 (ECF No. 1-1). Braden asserts that the trial court would have sustained an objection that Ramirez's testimony was inadmissible under article 38.072 of the Texas Code of Criminal Procedure; and, even if the trial court had overruled that objection, the issue would have been preserved for appeal. Mem. 7, 9 (ECF No. 1-1). Braden contends that Todd's failure to object was a prejudicial error and, therefore, the court should grant his petition. *Id.*

To succeed on a claim of ineffective assistance of counsel, a petitioner must show "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The standard requires the reviewing

5

court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 689. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Murray v. Maggio*, 736 F.2d 279, 281-82 (5th Cir. 1984); *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

Additionally, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. The petitioner must "affirmatively prove," not just allege, prejudice. *Id.* at 693. If he fails to prove prejudice, the court need not address the question of counsel's performance. *Id.* at 697. Merely presenting "conclusory allegations" of deficient performance or prejudice is insufficient to meet the *Strickland* test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

"[T]he test for federal habeas purposes is not whether [an inmate] made that showing [required by *Strickland*]. Instead, the test is whether the state court's decision—that [the inmate] did not make the *Strickland-*showing—was contrary to, or an unreasonable application of, the standards, provided by the clearly established federal law (*Strickland*), for succeeding on his [ineffective assistance of counsel] claim." *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003); *Charles v. Thaler*, 629 F.3d 494, 501 (5th Cir.

6

2011) (citing *Schaetzle*, 343 F.3d at 444); *see also* 28 U.S.C. § 2254(d)(1). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Braden raised his ineffective assistance of counsel claim in his state habeas application, and the CCA denied his application without a written order. *See* State Habeas Ct. R.-01 1 (ECF No. 10-26). The CCA's adjudication of this issue was on the merits. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (the denial of relief rather than a "dismissal" of the claim by the CCA is an adjudication on the merits) (citing *Jackson v. Johnson*, 150 F.3d 520, 524 (5th Cir.1998)); *see also Ex Parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits."). And this Court presumes that the CCA applied *Strickland* when it denied habeas relief on Braden's ineffective assistance of counsel claim. *See Schaetzle*, 343 F.3d at 443 (noting that the

federal habeas court assumes the state court applied the proper "clearly established Federal law"); *see also Richards v. Quarterman,* 566 F.3d 553 561-62 (5th Cir. 2009) (noting that the standard set forth in *Strickland* is the standard applicable to an ineffective assistance of counsel claim) (citing *Knowles v. Mirzayance,* 556 U.S. 111, 123-24 (2009)). Moreover, any factual determinations underlying the adjudication are entitled to a presumption of correctness, which can be rebutted only by making a showing of "clear and convincing evidence." *See* 28 U.S.C. § 2254(e); *see also Young v. Dretke,* 356 F.3d 616, 624 (5th Cir. 2004).

To prevail on his ineffective assistance of counsel claim, Braden must demonstrate that the CCA's determination—that Todd did not provide ineffective assistance of counsel—was an unreasonable application of the clearly established federal standard set forth in *Strickland. See Schaetzle,* 343 F.3d at 444. The Supreme Court has emphasized counsel has "wide latitude in deciding how best to represent a client." *Ward v. Stephens,* 777 F.3d 250, 264 (5th Cir. 2015), *abrogated on other grounds by Ayestas v. Davis,* 138 S. Ct. 1080 (2018). On federal habeas review, "*Strickland* does not allow second guessing of trial strategy and must be applied with keen awareness that this is an after-the-fact inquiry." *Granados v. Quarterman,* 455 F.3d 529, 534 (5th Cir. 2006). Even when a trial attorney's strategy is not successful, it does not mean his performance was necessarily deficient.

*Avila v. Quarterman*, 560 F.3d 299, 314 (5th Cir. 2009) (citing *Granados*, 455 F.3d at 534).

Braden's ineffective assistance of counsel claim fails because he has not shown that Todd's performance was deficient. The failure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir.1998) (citing *Sones v. Hargett*, 61 F.3d 410, 415 (5th Cir. 1995)). Under *Strickland*, a court's review of counsel's performance should be "highly deferential." 466 U.S. at 698. This is so because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence[.]" *Id.* at 689. And "[g]iven the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices." *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993); *see also United States v. Scott*, 11 F.4th 364, 373 (5th Cir. 2021) (recognizing there are "countless ways to provide effective assistance in any given case") (quoting *Strickland*, 466 U.S. at 689).

Braden relies on the Texas Code of Criminal Procedure, articles 38.072 and 38.37. Mem. 5, 9 (ECF No. 1-1). Article 38.072, the "outcry statute," creates a hearsay exception in the prosecution of certain sexual offenses against children for the admission of the child's first outcry of sexual abuse to an adult. *Kelley v. City of Cedar Park*, 2022 WL 329342, at

9

*7 n.10 (W.D. Tex. Feb. 3, 2022) (citing *Bays v. State*, 396 S.W.3d 580, 581 n.1 (Tex. Crim. App. 2013)); *see Carney v. Director, TDCJ-CID*, 2021 WL 842124, at *4 (N.D. Tex. Mar. 5, 2021); *see also Sewell v. Director, TDCJ-CID*, 2022 WL 456338, at *21 (E.D. Tex. Jan. 21, 2022), *rec. adopted*, 2022 WL 446765 (E.D. Tex. Feb. 14, 2022). Article 38.37 generally excludes evidence of extraneous offenses or acts for aggravated sexual assault of a child, but it also provides "evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including . . . the state of mind of the defendant and he child; and . . . the previous and subsequent relationship between the defendant and the child." Tex. Code Crim. Proc. art. 38.37 § 1(b).

Braden has failed to show that Todd was deficient in failing to object to Ramirez's testimony under articles 38.072 and 38.37. *See* Mot. 6 (ECF No. 1); Mem. 1-9 (ECF No. 1-1). At trial, the State presented testimony from two outcry witnesses: Hoggatt, the victim's grandmother, and Ramirez, a forensic interviewer. 9 Reporter's R. 103-1115, 178-244 (ECF No. 10-20). The outcry testimony was especially important in this case because the victim was only three years old at the time of the alleged sexual assault and forensic interview. 4 Reporter's R. 13 (ECF No. 10-15); 9 Reporter's R. 20, 196 (ECF No. 10-20).

Todd filed a pretrial motion to address the admissibility of any outcry witness under article 38.072 and a request for a hearing. State Habeas Ct. R.-02 196-97 (ECF No. 10-27). The trial court held at least two pretrial hearings to determine the admissibility of the outcry witnesses. 2 Reporter's R. 12-41 (ECF No. 10-13) (addressing Hoggatt's testimony); 4 Reporter's R. 8-43 (ECF No. 10-15) (addressing Ramirez's testimony). The State gave Braden written notice that it intended to use outcry witness testimony. Clerk's R. 157-158, 166-67 (ECF No. 10-9). And the trial court ultimately found that the State could use both Hoggart and Ramirez as outcry witnesses at trial.

Ramirez testified that the victim told her Braden put his penis in the victim's mouth, the victim's mother walked in on one assault, and there were several other instances where Braden assaulted the victim. 9 Reporter's R. 197-98, 203, 211, 220, 225 (ECF No. 10-20). The victim also told Ramirez that Braden would get naked to take a shower, but he would let her in the bathroom, where he would pull back the curtain and put his penis in her mouth. *Id*. 224. The victim told Ramirez that Braden's penis hurt her teeth, and the victim demonstrated how this happened by putting her finger in her mouth, pulling her cheek to the side, and moving her finger side-to-side. *Id. at 198, 224-25, 238*.

Hoggatt's testimony was distinct from Ramirez's testimony. Hoggatt testified that the victim illustrated the assault using a hand gesture, stated

11

the assault did not hurt, and stated that the victim's mother was not present. *Id.* at 109-10. The victim also relayed to Hoggatt that Braden shook his "weenie," indicating with her hands. *Id.* 108-09. The victim also told Hoggatt that Braden kept trying to put his "weenie" in her mouth. *Id.* at 109-10. Hoggatt testified that after hearing the victim tell her these things, she took her to the police department. *Id.* at 110.

Ramirez and Hoggatt testified about separate and distinct events, which was something the State anticipated. Prior to trial, the grand jury amended the indictment to cover two possible criminal acts by Braden: (1) he caused the penetration of the child's mouth with his sexual organ, and (2) he caused the victim's mouth to contact his sexual organ.[2] Clerk's R. 242 (ECF No. 10-9). In Texas, more than one outcry witness can testify when the outcry statements are about different events and not repetitious in nature. "[A]n outcry 'is event-specific rather than person-specific' for admissibility purposes, and it is possible to have more than one outcry witness when

---

[2] Braden argues that the State "only charged one instance of abuse and did not give an extraneous notice as to any other instance of abuse under Tex. Code Crim. P. Art. 38.37." Mem. 8 & n.4 (ECF No. 1-1). But he is mistaken, and his argument is belied by the record. *See* Clerk's R. 242 (ECF No. 10-9). Braden further argues that if the State had presented multiple offenses to the jury, he would have been entitled to an election under *Phillips v. State*, 193 S.W.3d 904 (Tex. Crim. App. 2006). Mem. 8-9 n.4 (ECF No. 1-1). In *Phillips*, the CCA held, "[B]efore the State rests, the trial court has discretion in directing the State to make an election." 193 S.W.3d at 909. The record reflects that Todd elected not to ask the trial court to direct the State to elect. 13 Reporter's R. 14 (ECF No. 10-24).

multiple discrete acts of abuse are alleged to have occurred." *Maillart v. State*, 2022 WL 970556, at *5 (Tex. App. Mar. 31, 2022) (quoting *Gibson v. State*, 595 S.W.3d, 321, 326 (Tex. App.--Austin 2020, no pet.)); *see also Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) ("There may be only one outcry witness *per event*.") (emphasis added). In sum, Ramirez and Hoggatt testified about distinctly different sexual assault incidents, and for this reason, Braden cannot show that the admission of Ramirez's testimony at his trial as a second outcry witness, was improper.

Ramirez also testified extensively about the forensic interview she conducted on the victim, and this went beyond the victim's statements. 9 Reporter's R. 178-91 (ECF No. 10-20). Ramirez testified that, during her interview, she looked for sensory details from the victim to determine if the child's statements were based on an actual experience. *Id.* at 191. Ramirez explained that a child's outcry is an ongoing process, as opposed to one event where the child lets everything out all at once. *Id.* at 192. Ramirez explained that because the victim was only three years old, she had limited life experiences and vocabulary. *Id.* at 198-99, 211-13, 248. Ramirez testified that the victim's comparisons to Braden's genitalia as being "stinky," looking like brown paper and grass, and tasting like paper, chocolate, and bananas did not necessarily mean the events did not take place. *Id.* at 198-99, 211-13, 248. Finally, Ramirez testified that, over time, children forget some details of a sexual assault, and a three-year-old child, especially one who has

13

experienced multiple sexual assault traumas, such as the victim, would have a difficult time discerning one specific incident from another. *Id.* at 242-44.

Braden cannot demonstrate that Todd's failure to object was not the result of sound trial strategy. *See Strickland,* 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'") (quoting *Michel v. Louisiana,* 350 U.S. 91, 100-01 (1955)). It is possible that after the trial court held that both outcry witnesses could testify at trial Todd planned to highlight the inconsistencies in the victim's various statements. Also, Todd may have decided that continuing to object would draw the jury's attention to the outcry testimony and get in the way of the jury finding the victim's statements were not fully credible. At trial, Todd's strategy appears to have been to show that the victim's statements were not credible. For instance, when Todd cross-examined Anna Mitchell, a therapist who treated the victim, Todd focused on the theory that Hoggatt, her husband, and the victim's father coached the victim to make the criminal allegations against Braden. 10 Reporter's R. 42-44 (ECF No. 10-21).

Hoggatt's testimony on direct was brief, as she could only testify about one incident from the victim. 9 Reporter's R. 104-15 (ECF No. 10-20). With Ramirez, however, Todd had more information to parse before the jury. For

14

instance, on cross-examination, Todd was able to bring out how the victim described the sensory details of the assault. *Id.* Todd was also able to elicit from Ramirez that when the victim described the assault she stated that "[Braden] was talking and making circles and a bird flew by the house and the bird saw that." *Id.* at 213. Ramirez explained that this style of narrative is expected from a three-year-old child, but Todd also used the opportunity to discredit the allegations. *Id.* at 214.

Todd's examination of Ramirez further elicited testimony that once, when she asked the victim whether Braden put his penis in her mouth, the victim responded, "no." *Id.* at 216. Ramirez opined that this did not necessarily negate the victim's other statements because she was discussing multiple encounters with Braden, and she was only three years old. *Id.* at 217. Todd used the outcry testimony, especially from Ramirez, to highlight inconsistencies in the victim's statements. Therefore, Braden has failed to show that Todd's failure to object to Ramirez testifying as the second outcry witness was not the result of sound trial strategy. *See Strickland*, 466 U.S. at 689.

Braden's claim also fails because he has not demonstrated prejudice. Prejudice under *Strickland* requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the trial would have been different. *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) ("To demonstrate prejudice under *Strickland*, [a petitioner] must show that

15

counsel's performance was 'so serious as to deprive [him] of a fair trial, a trial whose result is reliable.'") (quoting *Strickland*, 466 U.S. at 687). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Braden must demonstrate that if Todd had objected to Ramirez testifying and her testimony had been excluded, there is a "reasonable probability" it would have altered the outcome of his trial. *See id.* Braden cannot make this showing because there was sufficient evidence against Braden other than Ramirez's outcry testimony. For instance, Arlene Meadows, the nurse who performed the Sexual Assault Nurse Examiner (SANE) examination on the victim, testified that the victim told her Braden tried to put his penis in her mouth and wanted her to kiss it. 9 Reporter's R. 162-63 (ECF No. 10-20). Meadows explained that she assessed the victim and found many trauma-related symptoms, such as anxiety and sexual concern on the "Trauma Symptom Checklist for Young Children." *Id.* at 260-61. The victim also had frequent, distressing nightmares, and she had regressed in her toileting habits. *Id.* at 260-61. Meadows testified that sexual trauma would not normally be seen in a child that had not been exposed to sexual behavior. *Id.*

Moreover, Lonnie Falgout, a U.S. Secret Service Agent, testified that he originally attempted to give Braden a polygraph examination, but it was postponed for about a month because Braden stated he had not slept in a

16

few days. 10 Reporter's R. 70, 73, 76-78 (ECF No. 10-21). At the second polygraph examination, Agent Falgout asked Braden if the aggravated sexual assault allegations were true, and at first, Braden denied the allegations. *Id.* at 85. Later, Braden informed Agent Falgout that the victim climbed into his bed while he was sleeping, grabbed his penis, shook it, and put it in her mouth. *Id.* Braden repeated this statement before Tommy Black, a detective with Kaufman Police Department, and he recorded it. 8 Reporter's R. 12, 29-34, 42 (ECF No. 10-19); 9 Reporter's R. 20, 61-65 (ECF No. 10-20); 10 Reporter's R. 86-88 (ECF No. 10-21); 11 Reporter's R. 276-78 (ECF No. 10-22). The prosecutor played the recording for the jury at trial. 8 Reporter's R. 34-35 (ECF No. 10-19).

Detective Black testified that he did not think it reasonable to believe a three-year-old child would go into her mother's room, go under the covers, grab her stepfather's erect penis, and kiss it or put it in her mouth. 9 Reporter's R. 77 (ECF No. 10-20). Agent Falgout testified that there were some inconsistencies between Braden's statement to him and Braden's later statements. 10 Reporter's R. 91 (ECF No. 10-21). For instance, Braden said that he took Xanax the morning of the polygraph examination, but he later changed his statement when he spoke with Detective Black and denied taking Xanax. *Id.*

At trial, Braden took the stand and testified that when he told Agent Falgout and Detective Black the victim came into his bed while he was asleep

17

and put his penis in her mouth, he was "pretty high" and "tripping" on Xanax.³ 11 Reporter's R. 122-25, 132-34 (ECF No. 10-22). Braden also testified that Agent Falgout, Detective Black, and the victim were all lying. *Id.* at 139-40. Braden stated at trial that he could not recall the dreams, and for this reason, he could not testify about them. *Id.* at 145. He also stated he could not explain why he ever said that he was not on Xanax because he was on it. *Id.* at 159-60.

Braden admitted that he lied about some things during the recording, and he also agreed he was able to give plenty of details about the alleged dream in a way that made it seem like it really happened. *Id.* at 171-72. For instance, he stated on the recording that he was asleep when the victim came in, the victim's mother was on maternity leave and was making breakfast at that time, and he was home because he was off from work. *Id.* at 171-74. On the recording, Braden further claimed that he did not "intentionally or want [the incident with the victim] to happen," as he had "a wife that gives it to me when, where, and how," and he was "very satisfied." *Id.* at 174. When the State inquired about other inconsistencies between what he stated on the recording and at trial, Braden responded that it was merely ramblings. *Id.* at

---

³ At trial, the jury sent a note to the trial court requesting the taped confessions and transcript and a copy of Braden's phone and text records. Clerk's R. 256 (ECF No. 10-9).

18

175-77. Considering the totality of the evidence, Braden has failed to show how Todd's failure to object to this testimony prejudiced him.

In sum, the state court's finding that Todd did not provide ineffective assistance of counsel by failing to object to Ramirez's outcry testimony was not an unreasonable application of *Strickland*. Consequently, Braden's sole claim should be denied.

### Recommendation

The Court should DENY Braden's § 2254 petition.

Signed June 7, 2022.

                REBECCA RUTHERFORD
                UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996)